UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

      **Plaintiff-Respondent,**

   v.

MARVIN BOZEMAN,

      **Defendant-Movant.**

Case No. 2:19-cr-237(6)
JUDGE EDMUND A. SARGUS, JR.

## OPINION AND ORDER

This matter is before the Court on Defendant Marvin Bozeman's Motion to Vacate under 28 U.S.C. § 2255. (ECF No. 265.) The Court ordered the Government to respond (ECF No. 266), and it did so by moving to dismiss for untimeliness and answering the Motion on the merits (ECF No. 280). Mr. Bozeman filed a waiver of attorney-client privilege. (ECF No. 274.) Mr. Bozeman also made additional filings related to his Motion, which the Court has reviewed. (ECF Nos. 281, 284, 285, 292, 293.)

For the reasons explained below, the Court **DENIES** Mr. Bozeman's § 2255 Motion. (ECF No. 265.)

**I.   BACKGROUND**

On February 27, 2020, Mr. Bozeman was charged by a Superseding Indictment with other co-defendants with conspiracy to distribute, to possess with intent to distribute, and to attempt to distribute 500 grams or more of a mixture or substance containing a detectible amount of methamphetamine (count 1). (ECF No. 40.) While discovery was ongoing and the case proceeded, Mr. Bozeman had multiple attorneys withdraw until his fourth attorney, Joseph Landusky, appeared in March 2021. (*See* ECF Nos. 79, 103, 106, 114, 176.) After entering his appearance, Mr. Landusky filed an unopposed motion to continue the trial date, which was

granted by the Court. (ECF No. 179.) On July 9, 2021, the Government filed Mr. Bozeman's plea agreement. (ECF No. 186.)

### A. Mr. Bozeman's Presentence Investigation Report

After Mr. Bozeman entered his guilty plea, the U.S. Probation Office prepared a Presentence Investigation Report ("PSR"). In the PSR, the Probation Office stated that the investigation revealed that Mr. Bozeman coordinated the delivery of bulk quantities of methamphetamine from Las Vegas, Nevada to Columbus, Ohio. (ECF No. 237, PageID 1245.) The PSR attributed to Mr. Bozeman an amount of at least 15 kilograms but less than 45 kilograms of methamphetamine:

> Due to the historical nature of the case, the total quantity of drugs shipped by Bozeman was never determined. However, the DTO received two deliveries of approximately nine pounds each of methamphetamine, totaling 18 pounds. In June 2019, Blankenship attempted to purchase 20 pounds of methamphetamine from Bozeman; however, the drugs were never received. In total, Bozeman has been attributed with 38 pounds of methamphetamine which converts to 17.2 kilograms. Since this amount is at least 15 kilograms but less than 45 kilograms of methamphetamine, the base offense level is 36, as per U.S.S.G. § 2D1.1(c)(2).

(*Id.* at PageID 1248.)

The PSR also found that Mr. Bozeman acted in a supervisory role within the drug trafficking organization ("DTO") by orchestrating shipments of drugs from Nevada to Ohio and the transfer of drug proceeds from the transactions. (*Id.*) The PSR added a two-level increase under United States Sentencing Guidelines ("Guidelines") § 3B1.1(c). (*Id.*) As for the safety valve under 18 U.S.C. § 3553(f), the PSR said, "[i]f the defendant complies with all of these statutory and U.S.S.G. requirements, the government will not oppose the application of the safety valve provision." (*Id.* PageID 1244.)

**B. Mr. Bozeman's Objections and Sentencing Hearing**

In his sentencing memorandum, Mr. Landusky objected to the PSR. First, he argued Mr. Bozeman should not have been attributed with the 20 pounds of methamphetamine that were never delivered. (ECF No. 253, PageID 1339.) Mr. Landusky objected to the calculation of two deliveries totaling 18 pounds, arguing the calculation was "based off the gross weight of the packages as determined by the post office and not the net weight of the actual drugs." (*Id.* PageID 1340.) Mr. Landusky urged that Mr. Bozeman was not a supervisor in the conspiracy, and that it would be procedurally unreasonable to impose a leadership enhancement under Guidelines § 3B1.1(c). (*Id.* PageID 1340–41.) Mr. Landusky argued Mr. Bozeman should qualify for the safety valve under § 3553(f)(1). (*Id.* PageID 1341.)

The Government responded in its sentencing memorandum that Mr. Bozeman should be held responsible for the 20 pounds of methamphetamine because his co-defendant, Charlee Ann Blankenship, confirmed that she had negotiated to purchase methamphetamine from Mr. Bozeman and that she used drug proceeds as payment to Mr. Bozeman for the 20 pounds, consistent with earlier transactions. (ECF No. 280, PageID 1386.) The Government relied on Guidelines §2D1.1, commentary note 5, to support its argument: "In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense." (*Id.* PageID 1387.) The Government also urged that Mr. Bozeman was a supervisor in the DTO and did not qualify for the safety valve. (*Id.* PageID 1386–87.)

On April 8, 2022, the Court held Mr. Bozeman's sentencing hearing. (Transcript of Sentencing Proceedings as to Marvin C. Bozeman, II ("Sentencing Transcript"), ECF No. 263.) At the hearing, the Court addressed objections to the PSR, allowing each party the opportunity to

3

speak on the record and Mr. Bozeman to take the stand. (*Id.* PageID 1473.) The Court overruled the first objection, finding that "because there had been a relationship before this and packages were sent containing quantities of methamphetamine" and because it was not "a first-time transaction," the Court would "leave the drug quantity where it has been computed by the probation office." (*Id.* PageID 1474–75.) There was no dispute that there was an arrangement made for the drug transactions to be done, there was prior history of drugs being transported, and Mr. Bozeman had the means and ability to engage in the drug transactions. (*Id.* PageID 1475.)

Guidelines § 3B1.1(c) provides that if a defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in subsections (a) and (b) of the same Guideline,[1] then the offense level increases by two. U.S.S.G. § 3B1.1(c). During the sentencing hearing, the Court initially overruled Mr. Bozeman's objection that he should not receive the two-level enhancement. (Sentencing Transcript PageID 1476.) Mr. Bozeman, however, took the stand and testified about his role. (*Id.* PageID 1478–89.) The Court entertained additional argument from the parties and revisited that ruling, finding:

> This means you had to do more than do a drug transaction. You have to be organizing, leading, managing, or supervising others. There's certainly plenty of others in this case. The question is whether or not Mr. Bozeman was in that type of role relationship with them. And I think it's a close call, but I am going to find the objection is well taken.

(*Id.* PageID 1490–92.) The Court removed the two-level enhancement from the computation. (*Id.* PageID 1492.) The Court also found that the safety valve did not apply. (*Id.* PageID 1498.)

---

[1] Subsection (a) is relevant if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive and directs to increase the offense level by four. U.S.S.G. § 3B1.1(a). Subsection (b) states that if the defendant was a manager or supervisor (but not an organizer or leader) of criminal activity that involved five or more participants or was otherwise extensive, increase by three levels. U.S.S.G. § 3B1.1(a).

4

Mr. Bozeman's final offense level was a 33, his criminal history was at a level III, and his guidelines range was 168–210 months. (*Id.* PageID 1498.) Ultimately, the Court sentenced Mr. Bozeman to 154 months of imprisonment. (ECF No. 258, PageID 1453.)

### C. Mr. Bozeman's Motion to Reduce His Sentence

Since the Court entered judgment, Mr. Bozeman filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2). (ECF No. 286.) He sought retroactive application of the United States Sentencing Guidelines Amendment 821 and a resulting three-month reduction to his 154-month sentence. (*Id.* PageID 1619–20.) The Government urged the Court to grant the requested reduction. (ECF No. 288, PageID 1640.) The Court agreed it was warranted, and reduced Mr. Bozeman's term of imprisonment from 154 months to 151 months. (ECF No. 289.)

With that background, the Court addresses Mr. Bozeman's § 2255 Motion.

## II. STANDARD OF REVIEW

A prisoner may move to vacate his sentence under 28 U.S.C. § 2255 if he or she can demonstrate that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, "a petition must demonstrate the existence of an error of constitutional magnitude which has a substantial injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (citing *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

Where a factual dispute arises in a § 2255 motion, the habeas court must hold an evidentiary hearing "to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (citing *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir.

5

2007)). But a hearing is not required in every case, including where "the record conclusively shows that the petitioner is entitled to no relief." *Id.* (citing *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999)).

### III.  ANALYSIS

Mr. Bozeman states three grounds for relief in his Motion and contends it is timely. (ECF No. 265.) In all three grounds asserted, Mr. Bozeman says his counsel, Mr. Landusky, was ineffective during the plea negotiations and the sentencing phase. (*Id.*) The Government responds that Mr. Bozeman's Motion is untimely, but also addresses the substance of Mr. Bozeman's claims. (ECF No. 280, PageID 1581.) Mr. Bozeman replies to the Government in a filing. (ECF No. 281.) The Court begins by examining the timeliness of Mr. Bozeman's Motion, and then turns to the merits of his claims.

**A.  Mr. Bozeman's § 2255 Motion is timely.**

The U.S. Courts form for a § 2255 motion prompts the movant to write on the timeliness of his or her motion: "If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion." Section 2255(f) provides:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

6

>  (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Subsection (f)(1) is relevant here.

The Court entered judgment against Mr. Bozeman on April 15, 2022. (ECF No. 258.) The underlying judgment becomes final 14 days after its entry (so here, April 29, 2022), because Mr. Bozeman did not file an appeal from judgment. *See* Fed. R. App. P. 4(b)(1)(A)(i); (ECF No. 265, PageID 1540). Mr. Bozeman's § 2255 Motion was filed with the Court on May 10, 2023. (ECF No. 265.)

The Government argues the Motion is untimely because it should have been filed within one year from the date that Mr. Bozeman's conviction became final. (ECF No. 280, PageID 1581 (citing § 2255(f)(1)).) Mr. Bozeman states that the one-year statute of limitations should not bar his Motion because the Motion was placed in the prison mailing system at "USP Tucson and misplaced by staff." (ECF No. 265, PageID 1549.) Mr. Bozeman represents that the following events happened:

> The defendant then placed the 2255 in the prison mailing system via the Corrections Officer on 3/31/23. After two weeks past [*sic*] and the Court did not received [*sic*] the motion the defendant and Case Manager tracked the package and noticed it had not been shipped out yet. Case manager Romaro as well as Counsel Demitravich and supervisor Ybarrra all attempted to locate the missing appeal but were all unable to find it.

(*Id.*) Mr. Bozeman urges that the one-year statute of limitation does not bar his Motion because he placed it in the prison mailing system before the one-year mark. (*Id.*)

Rule 3(d) of the Rules Governing § 2255 Proceedings ("§ 2255 Rules") states that "[a] paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day of filing." The same Rule directs that "[t]imely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized

7

statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid." § 2255 Rule 3(d).

Further, the statute of limitation under 28 U.S.C. § 2255(f) is subject to equitable tolling. *Johnson v. United States,* 457 F. App'x 462, 469 (6th Cir. 2012) (citing *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011)). Courts can use equitable tolling to lengthen a statute of limitations when a litigant's "failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id.* (quoting *Robertson v. Simpson,* 624 F.3d 781, 783 (6th Cir. 2010)). A movant is entitled to equitable tolling only when he shows that: (1) "he has been pursuing his rights diligently," and (2) that "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 470 (quoting *Hall,* 662 F.3d at 749 (6th Cir. 2011)). The movant bears the burden of persuading the court that he is entitled to equitable tolling. *Id.* at 496 (citing *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003)). Equitable tolling is applied only sparingly. *United States v. Sferrazza*, 645 F. App'x 399, 408 (6th Cir. 2016); *see also Mote v. United States*, No. 2:12-CR-234, 2018 WL 8544777, at *3 (S.D. Ohio Mar. 6, 2018).

Before the Court addresses Mr. Bozeman's statement on timeliness, the Court observes that Mr. Bozeman's § 2255 Motion states at the end that he: "declare[s (or certifies, verifies, or states)] under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on 4/27/23." (ECF No. 265, PageID 1550.) Mr. Bozeman affixed his signature under that declaration. Under § 2255 Rule 3(d), this may suffice.

Even if the above was insufficient under § 2255 Rule 3(d), the Court assumes Mr. Bozeman's assertion that his first § 2255 motion was placed in the prison mailing system by

March 31, 2023, and got lost in the system, is true. Mr. Bozeman's statement makes clear he has pursued his rights diligently. A motion getting lost in the prison mailing system presents an extraordinary circumstance.

The Court turns to the merits of Mr. Bozeman's Motion.

**B. Applying *Strickland v. Washington*, Mr. Bozeman's stated grounds for relief fail because he had constitutionally sufficient representation throughout his case.**

Mr. Bozeman states three grounds for relief in his Motion. First, he states that Mr. Landusky failed to present three exculpatory affidavits and did not object to paragraphs 19–21 of the PSR, which caused Mr. Bozeman to be exposed to a higher guideline range. (ECF No. 265, PageID 1542.) In ground two, Mr. Bozeman asserts that Mr. Landusky was ineffective during the sentencing phase when he failed to object to Mr. Bozeman being assigned a higher drug quantity than his fellow coconspirators, when the coconspirators "had the same factual record."[2] (*Id.* PageID 1543.) In the third ground, Mr. Bozeman argues that Mr. Landusky failed to argue at sentencing for the Court "to underestimate drug quantity and to use consistant [*sic*] ratio for all suspected drug packages." (*Id.* PageID 1545.)

The Sixth Amendment guarantees the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test to determine whether ineffective assistance of counsel warrants a new trial. A defendant must demonstrate "(1) that counsel's performance was

---

[2] Mr. Bozeman reiterates this argument in his other filings. For example, in an "Addendum" he states he "never purchased narcotics with his own money or on his on accord. . . . Therefore Bozeman can not possibly have a higher drug quantity than Howard, Blankenship or the DTO when he was given the money to purchase the narcotics (from Howard and Blankenship) and never purchased anything without the consent of the DTO or on his own." (ECF No. 284; *see also* ECF No. 285 ("DTO leaders Howard and Blankenship were attributed with 5–15 kilograms, yet Bozeman was attributed with 15–45 kilograms, when Howard, Blankenship and Bozeman all have the same factual record.").)

deficient, and (2) that the deficient performance prejudiced the defendant." *Simmonds v. Bowen*, 841 F. App'x 838, 840 (6th Cir. 2021) (citing *Strickland*, 466 U.S. at 687).

"Under the first prong of the *Strickland* test, Defendant must show 'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *United States v. Leedy*, No. 1:16-CR-036, 2023 WL 3479996, at *6 (S.D. Ohio May 16, 2023) (Black, J.) (citing *Strickland*, 466 U.S. at 688). *Strickland* instructs that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Courts must avoid "the distorting effects of hindsight" to fairly assess attorney performance. *Id.*

As for the second *Strickland* prong, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Rather, counsel's performance must be prejudicial to be constitutionally ineffective. *Id.* at 692. To establish such prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

With these principles in mind, the Court examines the first ground described by Mr. Bozeman.

1. *Ground One*

Mr. Bozeman states that before he pled guilty, Mr. Landusky was given three exculpatory affidavits "proving that 2 of the suspected drug shipments did not contain drugs." (ECF No. 265, PageID 1542.) Mr. Bozeman asserts that "[t]he attributing of these packages to the defendant was objected to by the defendant in the statement of facts and placed on the record by the court at the Plea [Colloque]." (*Id.*) But according to Mr. Bozeman, his counsel failed to present the

10

three affidavits and did not objection to paragraphs 19–21 of the PSR, which caused Mr. Bozeman to be exposed to a higher guideline range. (*Id.*) Those paragraphs of the PSR describe how Mr. Bozeman was a primary supplier to Joseph Howard for drugs for redistribution and how packages of methamphetamine were sent at Mr. Bozeman's direction from Las Vegas, Nevada to Columbus, Ohio. (ECF No. 237, PageID 1245–46.)

The three affidavits discussed are attached to Mr. Bozeman's Motion. (ECF No. 265.) The first is by Sir Joseph Terry, is dated October 7, 2020, and states that a package he received from Mr. Bozeman contained clothing to "help with the promotion of the brand [Ovurnihte] for [Mr. Bozeman] and my sisters [*sic*] business." (*Id.* PageID 1551.) The second affidavit is by Robert Williams and is dated August 13, 2020. (*Id.* PageID 1552.) Like Mr. Terry's affidavit, Mr. Williams's affidavit states the box he received from Mr. Bozeman contained clothing and accessories. (*Id.*) The third affidavit is by Shanieck Williams and is dated September 2, 2020. (*Id.* PageID 1553.) It states the box she received contained clothing and accessories to "promote the brand and business." (*Id.*)

The Government responds that in his own affidavit, Mr. Landusky denies being given the three affidavits. (ECF No. 280, PageID 1585.) Mr. Landusky states he was never given these affidavits and did not know they existed. (*Id.*) Mr. Bozeman did not mention the affidavits during sentencing, even though he raised issues directly with the Court during his sentencing. (*Id.*) The Government points out that the affidavits appear to have been prepared in the fall of 2020, nine months before Mr. Bozeman entered his guilty plea. (*Id.*) It also observes that, even given the timeline and lengthy PSR process, the affidavits did not appear. (*Id.*)

Mr. Landusky's declaration is made under penalty of perjury. (Landusky Aff., ECF No. 280-1, PageID 1593.) Penalty of perjury means that Mr. Landusky could face criminal liability if

11

the statements in his declaration are knowingly untruthful, so the Court gives his statements the appropriate corresponding weight. *See* 18 U.S.C. § 1623. He testifies that Mr. Bozeman's statements are incorrect. (Landusky Aff., ECF No. 280-1, ¶ 8.) He says that he was never given the three affidavits and was never told about the affidavits. (*Id.*) Mr. Landusky states that if he had the affidavits while representing Mr. Bozeman, he would have presented them to the Government and the Probation Office and argued that the relevant conduct calculations were incorrect. (*Id.*)

The Court agrees with the Government that if Mr. Bozeman had the affidavits in his possession during the PSR process and sentencing, common sense indicates that Mr. Bozeman would have brought the documents to the attention of the Probation Office or the Court. He did not do so despite a lengthy dialogue with the Court, as well as getting on the stand to give testimony, during the sentencing hearing. (*See* Sentencing Transcript.)

Even if Mr. Landusky did have the three affidavits and failed to present them (the record reflects otherwise), and Mr. Landusky's doing so constituted deficient performance, *Strickland* instructs that when evaluating prejudice, courts "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695 (1984). Considering the affidavits with the Statement of Facts in the Plea Agreement and the PSR—which relied in part on statements from Mr. Bozeman's own co-defendants—Mr. Bozeman cannot show prejudice.

Ground one fails.

2. *Ground Two*

In his second ground for relief, Mr. Bozeman contends that his counsel was ineffective during sentencing when he failed to object to Mr. Bozeman "being assigned a higher drug quantity than the fellow coconspirators when all coconspirators had the same factual record."

12

(ECF No. 265, PageID 1543.) Mr. Bozeman states that he was not a leader or supervisor of the DTO. (*Id.*) Co-defendants Joseph Brian Howard and Ms. Blankenship were, and the drug amounts attributed to them were capped at 15 kilograms, while Mr. Bozeman was attributed with 17 kilograms. (*Id.*) He states there is "no way" that he can have a higher drug quantity than these two co-defendants. (*Id.*)

The Government responds that Mr. Bozeman misremembers, and that Mr. Landusky did object to these issues in both his sentencing memorandum and at the sentencing hearing. (ECF No. 280, PageID 1586.) The Government explains that Mr. Bozeman was "the out of state supplier of the Methamphetamine" and "was being held responsible for all of the narcotics provided (and/or agreed to be provided) to the Joseph Howard drug trafficking organization." (*Id.*) There were, the Government notes, other co-conspirators down the distribution chain who were accountable for quantities they received or distributed. (*Id.*)

In Mr. Bozeman's sentencing memorandum, Mr. Landusky objected to the amount of methamphetamine Mr. Bozeman was attributed with and to Mr. Bozeman's role in the offense. (ECF No. 256.) Mr. Landusky asserted that there was "no evidence Bozeman exercised control over any other knowing participant," and where Defendant Howard and Defendant Blankenship resold drugs, there was "no evidence that Bozeman had any say in that level of distribution." (*Id.* PageID 1398–99.)

As explained above, during the sentencing hearings, the Court spent time on Mr. Landusky's objections, allowing each party to make its arguments before ruling on the objections. (Sentencing Transcript.) The Court overruled the objection on the amount of drugs, reasoning it was not a first-time transaction and so the computation by the Probation Office was correct. (*Id.* PageID 1474.) After much back and forth, argument from Mr. Landusky and the

13

Government, and Mr. Bozeman taking the stand and testifying, the Court sustained the objection as an organizer, leader, manager, or supervisor under Guidelines § 3B1.1(c) and reduced Mr. Bozeman's offense level by two points. (*Id.* PageID 1490–92.) Much time was spent by the Court and the parties on these issues. Additionally, Mr. Landusky compared and contrasted Mr. Bozeman to his co-defendants, and the Government and Court did the same. (*Id.* PageID 1499, 1505–06.) The Court took all this into consideration when determining Mr. Bozeman's sentence. Mr. Bozeman's counsel was not ineffective, quite the opposite.

Mr. Bozeman's second ground for relief is meritless.

3. *Ground Three*

On ground three, Mr. Bozeman states that his counsel failed to argue at sentencing for the Court to underestimate the drug quantity and to use a "consistent ratio" for all suspected drug packages. (ECF No. 265, PageID 1545.) He seeks to take the ratio of box weight to drug weight in certain packages of drug transactions and apply the same ratio to other packages of drug transactions to get to a range of 5–15 kilograms and not 17 kilograms. (*Id.*) He asserts his counsel failed to make these arguments at sentencing. (*Id.*)

The Government responds with several reasons why Mr. Bozeman's ratio computation does not make sense and conflicts with his other positions. (ECF No. 280, PageID 1587–89.) It argues Mr. Bozeman's drug weight determination is meritless and so too is his argument that his attorney was ineffective. (*Id.* PageID 1589.) The Government contends that the Probation Office and Court used conservative estimates when determining the relevant conduct attributed to Mr. Bozeman, Mr. Landusky challenged the findings as appropriate, and the Court ultimately imposed a sentence below the Guidelines, "so the relevant conduct findings were not completely dispositive of the actual sentence imposed." (*Id.*)

14

As explained above in section III.B.2, Mr. Landusky zealously advocated for Mr. Bozeman during sentencing, both on paper and in court. (Sentencing Transcript.) Mr. Bozeman also testified on the stand and spoke to the Court from the defense bench during his sentencing. (*Id.*) The defense had ample opportunity to make arguments. Review of the record shows that Mr. Landusky did in fact make arguments about the calculation of drug weight in his sentencing memorandum, which the Court considered when determining the proper quantities. (*See* ECF No. 253, PageID 1340 (objecting to the calculation of two deliveries totaling 18 pounds, arguing the calculation was "based off the gross weight of the packages as determined by the post office and not the net weight of the actual drugs").) The Court considers many things during sentencing including, but not limited to, the Guidelines, the §3553(a) factors, the arguments made in the sentencing memoranda, the PSR, and the arguments made at a sentencing hearing. Considering all the aforementioned, the Court left the drug quantity as it had been computed by the Probation Office in the PSR, despite Mr. Landusky's arguments otherwise. (Sentencing Transcript, PageID 1474–75.) Mr. Bozeman's counsel was not ineffective.

Ground three fails too.

IV. **CONCLUSION**

Mr. Landusky's representation of Mr. Bozeman was competent and thorough; there is nothing indicating Mr. Bozeman experienced ineffective assistance of counsel. The Court **DENIES** Mr. Bozeman's § 2255 Motion. (ECF No. 265.) Mr. Bozeman is not entitled to an evidentiary hearing because the record establishes that he is not entitled to relief. *See Huff*, 734 F.3d at 607. Finally, under Rule 11 of the Rules Governing § 2255 Proceedings and 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability because Mr. Bozeman has not made a substantial showing of the denial of a constitutional right.

The Clerk is **DIRECTED** to enter judgment and close Mr. Bozeman's § 2255 case.

**IT IS SO ORDERED.**

**4/29/2025**　　　　　　　　　　　　　　**s/Edmund A. Sargus, Jr.**
**DATE**　　　　　　　　　　　　　　　　**EDMUND A. SARGUS, JR.**
　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**